Your Honor, this is the first case of the morning, call 210-1118, Bank of New York. Excuse me, J.P. Morgan Chase v. Bank of New York. On behalf of the appellant, Mr. William Holloway. On behalf of the athlete, Ms. Karen Kawashima. Thank you. Mr. Holloway. Good morning, Your Honors. Good morning. I'm going to place the card. If you would care for a rendition of any of the facts, I'd be happy to give it to you. Otherwise... This is a hot court. That means that we've read the briefs and we've read a pre-hearing memorandum that sets forth what the record relates with a statement of facts and an analysis. Thank you, Your Honors. We are here to ask that this court adjudicate the priority of the two mortgages rather than what I imagine is your alternative to send it back to the circuit court. For the circuit court to determine that. We did ask and the circuit court declined to do that. Normally, the judgment is final when it's capable of being executed upon the issuance of the mandate. So, if we affirm the trial court, what will be enforced? Nothing, because there are no final orders in either of the two foreclosures. Neither of the foreclosures have gone to sale and, you know, share of sale and non-approval of the share of sale. And a foreclosure is not complete, is not final, until that happens. So, the Bank of New York foreclosure, there was an order entered permitting it to go to sale. That order was entered in December of 2008. And in the J.P. Morgan case, the order permitting it to go to judicial sale was entered in June of 2008. And then in early 2009, by means that really don't appear in the record, somehow the lawyers in the J.P. Morgan case learned that there is a foreclosure on the same property, proceeding, of course, at the same court, and then made the motion to intervene. And so, the two cases have been proceeding from approximately March of 2009 on the intervention issues. Your Honor, sir. I'm sorry. Go ahead. The trial court early on in the Bank of New York foreclosure found that Washington Mutual was not a necessary party. And I think the argument from the other side, or at least one of the arguments, is that that basically was a ruling on the lien priority. Can you comment on that? Yes, Your Honor. For one thing, Washington Mutual was not a party to that. That argument that Washington Mutual was a necessary party was raised by Mr. Hamadani, who was the owner of the property. Our response to that argument is that actually Bank of New York, that the court had no subject matter jurisdiction for the foreclosure that was proceeding by the Bank of New York. So, actually, everything and anything that happened in the course of those proceedings is sort of its legal significance analogy. And the... Did the Hamadani's actually argue that Washington Mutual was a necessary party? Yes, they did. Yes, Your Honor, they did make that argument. But they never came up with the argument that Bank of New York didn't have a mortgage to begin with. And that is the root of our argument, that Bank of New York and its mortgage were not in the chain of title after the recording of the... of what we take as the forged release of that mortgage. Was that forged release... there was never an affidavit filed correcting that forged release? That is correct, Your Honor. That is correct. Which leads to another one of our fallback arguments, you might say. The matrix, at some point, became... relied on... well, matrix came... financial came in with a mortgage, which it thought was a first mortgage. And it relied... it came in, I think it was December of 2002. And it relied on, apparently, the release of the GM mortgage, which was the original one that becomes the Bank of New York mortgage. The matrix assigned its mortgage to Deutsche Bank, and in, I think it was early 2003, Deutsche Bank commenced its foreclosure. We respectfully submit that Bank of New York, or GM mortgage, if you will, was out of the chain of title from the time that matrix relied... well, really, from the time of the release of the mortgage. But in any event, Deutsche Bank then begins a foreclosure. It does not join a GM mortgage to its foreclosure. Because the GM mortgage, it already showed that it was a release. Yes, yes. And as a matter of fact, if you look at the Bank of New York caption on all of the briefs that we have here, they only joined the mortgages that, at the time that Bank of New York filed this, their foreclosure. That had not been released of record. Now Langman was quite a character, I think, because Langman, after he took title in 1998, entered into a new mortgage about every month or two. There were 11 mortgages that it entered into and almost as many releases. Mr. Holloway, when I asked you at the beginning of your oral argument whether this was a final order, I was going in the general direction that your prayer for relief asked that it be remanded for the trial court to make lean determinations or priorities. And then in the alternative, you asked that we enter judgment thereon. And the quandary that I have is, if there's not an enforceable order upon which judgment can be made, how is it that we have jurisdiction to do anything other than to dismiss the appeal? The appeal is here, and actually both parties, for what it's worth at least, agree that it's properly here for your jurisdiction. Yes, but you can't confer jurisdiction on us by agreement. It doesn't work that way. That is true. However... And it's been tried more than once during my tenure, too. The court did enter an order with the 304A language in it. There's no just reason to delay enforcement or appeal. And certainly the judge was correct in that, because we were obviously going nowhere, and he, for whatever reason, did not want to exercise his jurisdiction to resolve the priority dispute between the parties. My other point that I was getting to is simply that the foreclosure by Deutsche Bank did join Bank of New York or GM, whichever owned the mortgage at that time, by way of unknown parties. And I think that is the reason that the authorization to join unknown parties is included in the Illinois version of the Uniform Mortgage Foreclosure Act to help clean up title in that respect. Our third argument here is equitable as topical. Neither the foreclosure complaint filed by Bank of New York nor its notice of foreclosure make any reference whatsoever to the forged release of the mortgage. They simply proceed, proceeded then and proceed now, as if all of the things that occurred in the history of this case did not disturb in any respect whatsoever. Did the Hamadanans raise equitable as topical in their arguments? No, they did not, no. Counsel in their briefs, and they're answering your brief on this appeal, have argued that we are raising all of the issues that Hamadani raised. In our reply, I identified the four arguments that Hamadani made, and we did not make any one of them. And Hamadani did not make the arguments that we are making. Mr. Holloway, briefly, you didn't file a record in this case, no record from the lower court, no bystanders report was filed. How are we supposed to rule? Where are we getting our information? What do you submit? Oh, well, let's see. We did file a complete record of the Bank of New York case and the JP Morgan foreclosure, which then of course included all of the intervention documents. With respect to a bystanders report, I attempted to file that, although I have to say that it would not have informed you very much at all. You think the order is sufficient? I guess I shouldn't mention it. Pardon? You think the order in that matter is sufficient? Yes. Yes, I do. Yes. I mean, to simply say the real, we didn't get to file the bystanders report in time or some time lapse. The judge did sign the last one, but it was very cooperative. Why he didn't rule, I have no idea. I wanted to point out that Bank of New York's arguments are that a forged release should be ignored and have no legal consequence. But they argue only the cases that deal with forged deeds. And we're dealing with two different animals here. A forged deed, of course, is an attempt to convey an interest in property, and there are a number of good reasons why the courts have come to the decision that a forged deed has no effect. But a forged release is altogether different, and the courts have an altogether different point of view on that. Washington Mutual took a mortgage on this property after the Bank of New York foreclosure action had been put on record, correct? Yes, that's correct. What effect does that have on this? Respectfully, it has no effect. The reason is that at the time that the Bank of New York put their notice of foreclosure on file, namely July 13th of 2006, at that time, they were not in the chain of title. They were not what? They were not in the chain of title, Bank of New York. Why wasn't it in the chain of title? Because there was a release of its mortgage on file. You're saying that bonafide purchasers for value could rely on the forged release? Yes. That seems to be the implication. Yes, exactly. And we cite at least two or three or more cases on that. One is called Leonard's, and the other, Turpin, I think it's called, on page 10 or 13 of our brief. But think of the practical effect if, in foreclosures, the foreclosing attorney could not rely on the record of releases of prior mortgages. Why, you'd have to join them all. Now, if you can think of a better way to clog the court any further on mortgages, that would do it for sure. Your time is up, sir. If you'd close, you'll have a chance to make rebuttal. Thank you, Your Honor. Ms. Kawashima. Good morning, Your Honors. We're here today to determine the effect of a forged document on the chain of title. Why don't we consider the effect of my question, which is, if there's not an enforceable order, how can we do anything but dismiss the appeal? Your Honor, there is an enforceable order below. The circuit court, Judge Cargerman, determined that J.P. Morgan's motion to adjudicate lien priority should be denied, the effect of which was to allow the Bank of New York's foreclosure proceeding to move forward. You're saying we're playing Simon Says instead of Mother May I? Simon Says says everybody may take three steps forward, okay? That statement relates to multiple parties, but Mother May I is a declaration or a statement to one individual. And so when Mother says something can be done, it only applies to one individual. When the motion is denied, it doesn't mean that someone else gets relief. It doesn't mean that the movement takes one step back, and therefore everybody in relation to Mother is one step closer. I understand what you're saying, Your Honor. Do you? I think. Obviously, we're going to play Mother May I. My answer to that is J.P. Morgan and the Bank of New York. J.P. Morgan was granted leave to intervene in the Bank of New York foreclosure proceeding for the express purpose of bringing these issues to the circuit court. All of the issues that were raised on appeal were raised at the circuit court level. J.P. Morgan argued that it was entitled to bona fide purchaser protection, that the notice of foreclosure that was filed by Bank of New York should have no legal effect, and that it should rely on the record title. Judge Cargerman considered all these arguments. We fully briefed them. There were several motions for reconsideration, and the judge denied J.P. Morgan's request. There were a number of motions filed, and it seemed like it got distilled down to a motion to establish lien priority. Now, I know these other arguments were made in these other motions and then maybe even in the last motion, but the motion, as I understand it, was, please, judge, tell us which lien has priority, and the judge says, your motion's denied. What does that mean? I think the problem here is a confusion about the way that the motion was styled. It was titled a motion to adjudicate lien priority. However, the arguments that were raised therein broaden the scope of that motion. The arguments raised in any pleading do not control the verbiage or the language contained in a judgment. It may have some context, but if there isn't something that can be interpreted to mean either a positive or a negative that can be enforced, what the motion says is really, the motion is really the basis for an appeal. If, in fact, the relief that's granted in the order is outside the motion. In other words, it's in excess of the motion. So we're looking not at what the motion said or the pleadings or the arguments. We're looking at what the order says, and what the order says that someone, some thing, has priority. Well, your honor, I see where you're coming from, and I think there are several reasons why Bank of New York is entitled to priority in this case. But I understand where you're coming from. You're saying you think they're entitled to priority. But you raised an issue. You said all the issues raised on appeal were raised at the trial court. Correct. You're probably correct. But were all the issues that are raised on appeal resolved by the trial court? That's the question. I mean, doesn't the trial court have to resolve and dispose of all of the matters that come out of this foreclosure action? So if you're saying you think your client should have priority, you're just saying, yeah, I think they should have priority. But did the trial court make that determination? The trial court did, in fact, make that determination. Did they? By inference? Yes. I'd like to address some of the issues that counsel raised in his argument. Why don't you address his claim that we can render judgment instead of the trial court? That's his other prayer for relief. Well, I would argue, Your Honor, that that is not necessary because the— It's not a question of necessary. It's a question of do we have the authority to do so. I believe that you do. Are there any material issues of fact? No, Your Honor. All of the— Everything is a question of law based upon the record. Yes, that determination can be made by the record. And the reason for that is that the issue here is what the effect of the forged document in the chain of title is. And that document is part of the record, as is the mortgage debt issue here. And Bank of New York's position is a forged release simply cannot cause the Bank of New York to lose its interest in the property. This is exactly what J.P. Morgan is advocating. Go ahead. Did your client—did they ever file an affidavit of record correcting that forged document? They did not, Your Honor. Do you think that's important or relevant here? No, Your Honor, because J.P. Morgan was on notice several ways that there was a problem with their title. There are two ways in particular that I'd like to highlight here. First, the document that purported to release Bank of New York's lien was not in fact a release at all. It was defective on its face. And I'll go back to that in a moment. But second— If it was defective on its face, how could it be forged? A forged document is one that supposedly is supposed to fool somebody. And if it's defective on its face, how can it fool anybody? Well, it wasn't a very effective forgery, Your Honor. It wasn't a very effective forgery. Okay. But J.P. Morgan took its interest in the property after Bank of New York recorded its notice of foreclosure. And so that notice of foreclosure binds all subsequent interest holders, including J.P. Morgan. And that notice is enough to alert J.P. Morgan that the Bank of New York's interest was in fact not extinguished, that they were advancing a claim that was inconsistent with the document that purported to release the lien. And all of the cases cited by counsel in their briefs that stand for the proposition that a bona fide purchaser can rely on their record, those cases highlight the fact that a bona fide purchaser has no grounds for suspicion or no notice of any adverse title or claim inconsistent with their title. And that simply does not apply to J.P. Morgan in this case. They were alerted by the notice of foreclosure that Bank of New York filed that there was something wrong in the chain of title, that Bank of New York was advancing a claim on this property that was inconsistent with that document purporting to release. And if they had pulled up the release and looked at it, they would have seen that there were some facial defects, you know, that affected their chain of title. Does it matter whether your client became aware of the forgery? It seems like that was an issue that was raised by counsel in the briefs that perhaps you might want to conduct some discovery on this issue as to when your client, either your client or its predecessor, became aware of the forgery value. No, Your Honor. That doesn't matter because Bank of New York is entitled to rely on its good title. It doesn't have an affirmative duty to notify all prospective interest holders in its good title. However, even if it did have some sort of duty, the Bank of New York fulfilled that duty by filing its notice of correspondence. When you say they don't have the duty to notify, are you talking about by mail, or are you talking about by placement of a notice in the grantor-grantee index? I mean in any capacity, Your Honor. If Bank of New York has good title, it has good title, and any sort of forged document in the chain of title can't take that away. But you would agree that subsequent lenders would rely on that forged release and be lending money after money. You could have mortgage after mortgage stacked up behind this forged release. Nobody ever is aware that it's forged. That's possible, Your Honor, but those aren't the facts of this case. J.P. Morgan alleges that Bank of New York had notice of the forged release as of June 29, 2006, and only two weeks after that point, on July 13, 2006, Bank of New York filed its notice of foreclosure. That notice of foreclosure is in the record. It's part of the record title, and it serves as notice to all possible subsequent interest holders, including J.P. Morgan, that Bank of New York has a claim on this property and they intend to pursue it. But in line by way of mortgages, just by filing mortgage foreclosure, does that show where you are in line with respect to priority? Yes, Your Honor, because the basis of Bank of New York's foreclosure complaint was its mortgage that was recorded in 1999. So the notice of forfeiture or foreclosure was filed before the subsequent mortgagee distributed funds to the mortgagor? Correct, Your Honor. The notice of foreclosure was filed on July 13, 2006, and Washington Mutual, J.P. Morgan's predecessor in interest, acquired its interest in the property on August 1, 2006, after the notice of foreclosure was part of the record title. If somebody was looking at these orders for these two competing foreclosure actions, you know, I mean, if this order had been specific and said, I, Judge Carter, would find that you guys have priority, then you could go do your sale and everything else. Looking at these orders for these two cases, isn't there still a question as to who has what on this property? I mean, can you actually go out and have your sale and be done with the case based on these orders and these two competing cases? We can, Your Honor, and the reason for that is Judge Carterman decided that Washington Mutual was not a necessary party to this case, and J.P. Morgan takes by virtue of Washington Mutual. So his decision on summary judgment back in July of 2008, deciding that Washington Mutual was not a necessary party to this case, in fact, decided that J.P. Morgan's interest was secondary to the Bank of New York's interest. But there are arguments now being made that were different than the arguments made then. Well, many of the arguments were raised at that point. I know many is one thing, but if there's one argument that this party is making that was not heard then, then shouldn't we set it back to allow them to make that argument? No, Your Honor, because they made those arguments at the trial court. And the judge considered them, and he ruled upon those arguments. And we keep getting back to the same point. I know. I understand. I mean, that's the problem we have with this case is if the judge made a specific order, we might not all be sitting here. And, you know, you're saying that that order effectively did something, and the order doesn't say it specifically. That's what we're left with. Yes, Your Honor. Wouldn't it behoove you and your client to have the court have made a determination with respect to priority? Well, it's our position that the court did make a determination as to priority. By denying the motion. Yes, by denying the motion. As I stand here today, I would have appreciated if it appeared in the order. But the order says what it says. It's job security, Counsel. Indeed. Do you agree that this is a de novo situation as to whether or not the court actually exercised its jurisdiction over the case? I do, Your Honor. So we don't really necessarily need the court's rationale. We just need the court's decision. Correct. And the decision is what's in the order. Yes. I'd also like to address Counsel's point as to the Deutsche Bank 2002 foreclosure. JP Morgan claims that the 2002 Deutsche Bank foreclosure extinguished Bank of New York's mortgage. However, this is simply not the case. The Deutsche Bank foreclosure complaint did not name the Bank of New York. And as it was not named, it was not bound. JP Morgan claims that by virtue of the fact that Deutsche Bank named unknown owners and non-record claimants in its foreclosure complaint, that this draws in the Bank of New York and binds them to the Deutsche Bank foreclosure. However, just as a forged document cannot take title away from Bank of New York, it can't operate to somehow make them unknown or non-record. The Bank of New York was not unknown. And in fact, its interest was part of the chain of title and was duly recorded in the record for this property. It simply cannot become non-record based on a forged release in the chain of title, particularly because the document that purports to release the Bank of New York's mortgage is defective on its face. Would you agree that the Hamadanis and JP Morgan were not in privity in that earlier action? In the earlier action where the Hamadanis were involved? I'm sorry, the earlier action, the earlier Bank of New York foreclosure action, where the court ruled that Washington Mutual was not a necessary party. Would you agree that in that action that the Hamadanis and JP Morgan were not in privity? No, Your Honor, because JP Morgan steps into the shoes of Washington Mutual. And so, I'd have to think this through, but if Washington Mutual and the Hamadanis were in privity at that point, and JP Morgan steps into the shoes of Washington Mutual, I think I'd probably cover that. I have just one question. Do you find it interesting, or maybe you can explain to me, which is confusing a bit to me, that this Mr. Langman continued to pay that mortgage two years after this alleged forged release? I can't speak to his motivations in doing so, but it certainly goes to the point that Bank of New York had no idea that that release was filed, and that that document purporting to release should have no effect. Does your client still have the promissory note? Yes, Your Honor. Your time is up. Thank you very much. I've got to place the court. Counsel argues that the release of its mortgage that was recorded in August of 2000 is defective on its face and not really a release. We do address that in one of our briefs filed with this court. And they, in their brief, do not quote or release. They omit the title, which says release, but the language is sufficient to not release it. It is based on merger of title and purports to merge the fee with the mortgage. With respect to the notice of foreclosure as being a notice of the release, that is untrue. And again, all I can say is in the record of the notice of foreclosure, we also have the Bank of New York foreclosure complaint. And neither one of them refer to the recorded release. And we have authority that we've argued in our brief that a notice of foreclosure or a list pendants only gives constructive notice of what is actually in the notice and also in the complaint to foreclose. But they sent notice on July 1306, and it wasn't until after that that J.P. lends the money, correct? That is correct, Your Honor, yes. So weren't you placed on notice that there was somebody there before J.P. got there? I can only agree with that. But if you go back, what would we have found? We would have found the release and, for that matter, the foreclosure by Deutsche Bank and all the things that we've laid out here, and I think the conclusion then would be the same as it is now, that the Bank of New York has no standing. They're not improving. What they recorded July 13th, they're a stranger to title. But they're obviously owed something, otherwise they wouldn't have filed a foreclosure before your client gave them money, correct? Well, I guess they're owed money. For that matter, if they can find Langman and sue him on the note, they can still pursue that. There's no question about that. But the question is, do they have an interest in title? And that is what I respectfully say they do not. Was there a title company doing an examination for purposes of insuring a mortgage? Yes, Your Honor. As a matter of fact, the Hamadani had one title company. It was First American. And I presume the First American insured the Hamadani's purchase money mortgage, which is in the record, TCF. But TCF was paid off by Washington Mutual. And it was a refinance that Washington Mutual was engaged in on August 1 of 2006. I don't know. Does that answer your question? Yes, I think it does. And again, as to unknown owners and the ability to pick up outlets or parties such as Bank of New York here, I mean, who knew they had a release? I mean, they knew the release was there, but they didn't file anything. And you record it. They say in the record, and it's quoted in the briefs, when they learned about it that they sent letters to some of the parties in the chain of title, well, the one thing to do would be to record so that nobody else would rely on them. But the statute for unknown owners is the very thing that prevents the cluttering up of foreclosures any more than they are by permitting parties, again, like Bank of New York in this case, to omit all of the prior foreclosures in the chain other than those for which there were no releases. So you have two foreclosure actions on the same piece of property. Is there a reason why, to your knowledge, why they weren't consolidated? What do you mean rather than our intervention? It's trial court level. Why weren't they consolidated at the same time? Well, it's amazing. Fisher and Shapiro appeared on behalf of Bank of New York in this foreclosure. Fisher and Shapiro appeared on behalf of Washington Mutual in this foreclosure. With respect to the second mortgage of Washington Mutual. Now, they obviously were not aware of that conflict. And in May of 2009, when this intervention was rolling, they certainly became aware of it then and they moved to withdraw for that reason. But I'm just, you know, that's as much as I can tell you about who and who was. Okay. Thank you. We'll take the case under advisement. We're going to take a recess right now.